UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN EASTMAN,<br>    Plaintiff,<br>v.<br>APPLE INC.,<br>    Defendant. | Case No. 18-cv-05929-JST<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS AND REMANDING STATE-LAW CLAIMS**<br><br>Re: ECF Nos. 11, 19 |

Before the Court is the motion to dismiss filed by Defendant Apple, Inc. ECF No. 11. Apple has also filed a motion to file under seal an exhibit docketed by Plaintiff Darren Eastman. ECF No. 19. The Court will grant the motion to seal. The Court will grant in part the motion to dismiss and remand the remaining state-law claims. The Court will also terminate Eastman's recently-filed motion to compel, ECF No. 25, as moot.

## I. BACKGROUND

As alleged in his First Amended Complaint, Darren Eastman began working for Apple in 2006. ECF No. 1-2 at 14 ("FAC"). According to Eastman, he disclosed "a process for selling mobile tickets using an Apple operating system" to Apple in 2006, through Eastman's Intellectual Property Agreement ("IPA") with the company. *Id.* at 13. Eastman contends that Apple later filed a successful patent application "that closely resembles" Eastman's process and for which Apple did not name Eastman as a joint inventor. *Id.* Eastman does not dispute that this application issued as U.S. Patent Number 9,125,014 (the "'014 patent"). ECF No. 12 ¶ 7; ECF No. 17 at 12-13.

Prior to 2009, Eastman also came up with an idea for "a novel method and apparatus for locating a lost smartphone or computing device," which he conveyed to his superiors at Apple. *Id.*

at 12.  In June 2010, Apple released the "Find my iPhone" feature for its products, which Eastman claims was derived from his invention. *Id.* at 12-13.  Shortly after the release, Eastman contacted Apple's patent counsel to inquire whether Apple would seek patent protection. *Id.*  Apple subsequently filed four successful utility patent applications based on the technology, but Eastman was not joined as an inventor on the applications. *Id.* at 13.  Eastman does not dispute that these applications issued as U.S. Patent Numbers 9,104,896 (the "'896 patent"); 8,881,310 (the "'310 patent"); 9,706,032 (the "'032 patent"); and 9,763,098 (the "'098 patent") (collectively, the "phone-finding patents").  ECF No. 12 ¶¶ 3-6; ECF No. 17 at 12-13.

In 2009, Eastman had a conversation with then-Apple CEO Steve Jobs, in which Eastman claims Jobs "made [Eastman] promise that he'd always work for Apple and indicated that a job would always be available for him." *Id.* at 15.

Apple fired Eastman on September 23, 2014. *Id.* at 19.  Eastman contends that this termination was substantially based on his seven disabilities, *id.*, as well as an unrelated small-claims dispute involving Eastman's personal Apple product, *id.* at 25.  In addition, Eastman's termination occurred fifteen days before some of his restricted stock units ("RSUs") were due to vest, depriving him of those options. *Id.* at 34-35.  Roughly a month later, Apple mailed Eastman's personal belongings to his home during a period when, according to Eastman, Apple knew Eastman was away on an extended vacation. *Id.* at 40-41.  Due to Eastman's absence, he never received his belongings. *Id.*

Over two years later, on November 2, 2016, Eastman's counsel submitted a demand letter to Apple's legal department. *Id.* at 10.  Communications with Apple quickly broke down; Eastman and his counsel also separately suffered severe medical events that further hindered communication. *Id.*

On August 13, 2018, Eastman filed this lawsuit pro se against Apple in state court.  ECF No. 1 ¶ 1.  Eastman then filed his FAC on August 22, 2018, which he served on Apple on August 29, 2018. *Id.* ¶¶ 2, 6.  The FAC contains numerous claims, delineated as (1) utility patent non-

joinder for the '014 patent and the phone-finding patents; (2) wrongful termination;[1] (3) conversion of RSUs; (4) breach of the covenant of good faith and fair dealing; (5) conversion of personal property; and (6) intentional infliction of emotional distress. FAC at 4. Eastman also appears to allege claims for breach of contract, *id.* at 27-28, and intentional interference with contractual relations, *id.* at 31-33.

On September 27, 2018, Apple timely removed the case to federal court. *See* ECF No. 1. Apple then filed this motion to dismiss, arguing that most of Eastman's claims were time-barred and that he had failed to state a claim as to his remaining causes of action. ECF No. 11.

## II. MOTION TO SEAL

In connection with this motion, Apple has filed an administrative motion to seal an exhibit to Eastman's opposition. *See* ECF No. 19. Apple contends that the exhibit contains privileged communications between its in-house legal counsel and Eastman during Eastman's tenure as an employee. ECF No. 19 at 2. Apple has filed a declaration in support of sealing. ECF No. 19-1.

A party seeking to seal a document filed with the court must (1) comply with Civil Local Rule 79-5; and (2) rebut the "a strong presumption in favor of access" that applies to all documents other than grand jury transcripts or pre-indictment warrant materials. *Kamakana v. City & County. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation and internal quotations omitted).

With respect to the first prong, Local Rule 79-5 requires, as a threshold, a request that (1) "establishes that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law"; and (2) is "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). An administrative motion to seal must also fulfill

---

[1] Eastman's complaint appears to raise multiple theories of wrongful termination, all under state law. First, Eastman alleges that his discharge was in retaliation for successfully pursuing a small-claims court action against Apple for a defect in his personal iPad, in violation of California Labor Code sections 98.6 and 1102.5. FAC at 25. Second, Eastman contends that his discharge violated the Fair Employment and Housing Act because it was substantially motivated by his request for reasonable accommodations for his protected disabilities, contrary to California Government Code section 12940(h). FAC at 28-29. Finally, Eastman invokes the common-law protection against wrongful termination in violation of public policy, seemingly on the same grounds as his statutory claims. *Id.* at 26-27.

the requirements of Civil Local Rule 79-5(d). "Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." Civil L.R. 79-5(d)(1)(A).

With respect to the second prong, the showing required to overcome the strong presumption of access depends on the type of motion to which the document is attached. "[A] 'compelling reasons' standard applies to most judicial records. This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 n.7 (1978)). To overcome this strong presumption, the party seeking to seal a judicial record must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178-79 (internal citations omitted).

On the other hand, records attached to motions that are only "tangentially related to the merits of a case" are not subject to the strong presumption of access. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). Instead, a party need only make a showing under the good cause standard of Rule 26(c) to justify the sealing of the materials. *Id.* at 1097. A court may, for good cause, keep documents confidential "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

A district court must "articulate [the] . . . reasoning or findings underlying its decision to seal." *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2374 (2012).

Here, the "compelling reasons" standard applies to Apple's motion to dismiss. *See Ponomarenko v. Shapiro*, No. 16-CV-02763-BLF, 2017 WL 3605226, at *2 (N.D. Cal. Aug. 21, 2017). Because the redacted material contains attorney-client privileged communications, the Court finds that compelling reasons exist to seal the exhibit.[2] *See Fed. Trade Comm'n v.*

---

[2] Although Eastman and Apple are now adverse, the documents in question consist of communications between him and Apple's in-house patent counsel during the time Eastman was an Apple employee. Thus, those communications continue to be privileged.

4

*Qualcomm Inc.*, No. 17-CV-00220-LHK, 2018 WL 2317835, at *6 (N.D. Cal. May 22, 2018) ("Courts have accepted attorney-client privilege as a sufficient justification for sealing, even under the higher 'compelling reason' standard.").

The Court therefore grants Apple's motion to file under seal.

### III. JURISDICTION

Eastman's patent claims seek correction of ownership under 35 U.S.C. § 256(a). Accordingly, the Court has jurisdiction over Eastman's patent claims pursuant to 28 U.S.C. §§ 1338(a) and 1441(a).

The Court lacks jurisdiction, however, over Eastman's state-law claims. "The burden of establishing federal subject matter jurisdiction falls on the party invoking removal." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009). Apple's notice of removal sets forth the Court's exclusive jurisdiction over Eastman's patent claims, pursuant to 28 U.S.C. § 1338(a), as the sole basis for removal. ECF No. 1 ¶¶ 1-5. But Eastman's state-law claims are based on his termination and other associated events, which Eastman contends occurred for reasons wholly unrelated to the patent applications, namely his pursuit of a small-claims court action involving his personal iPad and Eastman's disabilities. On their face, these claims do not fall within the scope of 28 U.S.C. § 1338(a), which applies to "any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."[3]

Nor are these claims "so related to" Eastman's patent claims "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (quoting *Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003)). In making this determination, courts have looked to the degree of overlap between the legal and factual issues necessary to resolve the different claims. *See AngioScore, Inc. v. TriReme Med., Inc.*, 87 F. Supp.

---

[3] Apple does not allege that diversity jurisdiction exists under 28 U.S.C. § 1332.

3d 986, 999 (N.D. Cal. 2015); *Slack v. Int'l Union of Operating Eng'rs*, No. C-13-5001 EMC, 2014 WL 4090383, at *9 (N.D. Cal. Aug. 19, 2014). Even where "patent claims and . . . state law claims all bear some connection to [the] allegedly improper use of [an entity's] intellectual property," they do not form part of the same case or controversy where the state law claims "relate to various products, features, and intellectual property not at issue in the patent case and require unrelated damage and liability theories." *Ariba, Inc. v. Coupa Software Inc.*, No. 12-CV-01484-WHO, 2014 WL 1466860, at *3 (N.D. Cal. Apr. 15, 2014).

Here, whether Eastman was wrongfully terminated because of his disabilities or as retaliation for an unrelated small-claims case raises factual issues that are distinct from the facts underlying Eastman's alleged inventorship role – the basis for his patent claims. It is not enough to "generally allege wrongdoing by the same or similar defendants." *Slack*, 2014 WL 4090383, at *10. Moreover, Eastman's complaint alleges that his interactions relevant to the patents were with different people at Apple than those who were responsible for his termination. FAC at 12-13, 19-22.

Most of Eastman's remaining state-law claims flow from this termination, including his claims for breach of contract, breach of the covenant of good faith and fair dealing, intentional interference with existing contractual or prospective economic relations, and conversion of RSUs. *See id.* at 27-28, 31-35, 37, 41-45. Eastman's claim for conversion based on Apple's failure to return his personal belongings is likewise unrelated to the facts underlying Eastman's patent claims. *See id.* at 40. Though Eastman's intentional infliction of emotional distress claim cites reputational injury from not being listed as an inventor, it appears to be primarily based on his loss of employment as well. *See id.* at 41.

For similar reasons, Eastman's state-law claims will turn on entirely independent legal issues. As discussed below, the crux of Eastman's patent claims is whether the ideas he suggested to Apple "contribute[d] to the conception of the invention" in the patents. *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). On the other hand, Apple's motion to dismiss and Eastman's opposition make clear that Eastman's state-law claims will turn, in the first instance, on whether the statute of limitations bars those claims and if so, whether Eastman

6

qualifies for equitable tolling. Even if Eastman clears that hurdle, resolving the merits of his state-law claims will not aid in resolving the merits of his patent claims, or vice versa. *Cf. AngioScore*, 87 F. Supp. 3d at 999 (explaining that resolving an issue would be "relevant in terms of calculating both patent and state law damages").

Accordingly, the Court concludes that it lacks original or supplemental jurisdiction over Eastman's state-law claims. The Court must, therefore, sever and remand those claims to state court. *See* 28 U.S.C. § 1441(c)(2).[4]

The Court now turns to Eastman's patent claims.

## IV. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Moreover, "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

---

[4] Because Eastman's recent motion to compel responses to interrogatories, ECF No. 25, addresses his state law employment claims, the Court also terminates that motion as moot.

7

by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

### B. Patent Inventorship

As a general matter, patents must list all of the true inventors. *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1301 (Fed. Cir. 2002). "Conception is the touchstone of invention, and it requires a definite and permanent idea of an operative invention, including *every feature* of the subject matter sought to be patented." *In re VerHoef*, 888 F.3d 1362, 1366 (Fed. Cir. 2018) (internal quotation marks and citation omitted). A definite and permanent idea, in turn, exists "when the inventor has a specific, settled idea, *a particular solution* to the problem at hand, not just a general goal or research plan." *Id.* (citation omitted).

In order for an invention to have co-inventors, they "need not 'physically work together or at the same time,' 'make the same type or amount of contribution,' or 'make a contribution to the subject matter of every claim of the patent.'" *Vapor Point LLC v. Moorhead*, 832 F.3d 1343, 1349 (Fed. Cir. 2016) (quoting 35 U.S.C. § 116). Rather, a joint inventor must:

> (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art.

*In re VerHoef*, 888 F.3d at 1366 (quoting *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed Cir. 1998)).

The issuance of a patent "creates a presumption that the named inventors are the true and only inventors." *Ethicon*, 135 F.3d at 1460. But "[a] person who alleges that he is a co-inventor of the invention claimed in an issued patent who was not listed as an inventor on the patent may bring a cause of action to correct inventorship in a district court under 35 U.S.C. § 256." *Vapor Point LLC*, 832 F.3d at 1348 (quoting *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1357 n.1 (Fed. Cir. 2004)).[5] To overcome the presumption of correctness, "the alleged co-inventor or co-

---

[5] 35 U.S.C. § 256(a) provides in full:

> Whenever through error a person is named in an issued patent as the

8

inventors must prove their contribution to the conception of the claims by clear and convincing evidence." *Ethicon*, 135 F.3d at 1461.

**V.    DISCUSSION**

    **A.    Scope of Documents Considered**

As an initial matter, the Court addresses consideration of two sets of documents.

First, Apple submitted copies of the '014 patent and the phone-finding patents with its motion to dismiss, ECF Nos. 12-2, 12-3, 12-4, 12-5, 12-6, accompanied by a declaration that these patents issued from the applications cited in the FAC, ECF No. 12 ¶¶ 3-7; FAC at 24-25. The Court notes that the patent application numbers provided by Eastman are listed under prior publication data on each of the respective patents. *See* ECF No. 12-2 at 2; ECF No. 12-3 at 2; ECF No. 12-4 at 2; ECF No. 12-5 at 2; ECF No. 12-6 at 2. Eastman's opposition does not dispute the authenticity of the patents or that they correspond to his claims. Because these documents "form the basis of the complaint," the Court finds that they are incorporated by reference into the FAC. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *see also Guzik Tech. Enterprises, Inc. v. W. Digital Corp.*, No. 11-CV-03786-PSG, 2011 WL 6013006, at *1 (N.D. Cal. Dec. 2, 2011) (finding patent incorporated by reference).

Second, with his opposition, Eastman submitted an additional memorandum of points and authorities containing new factual allegations and attaching numerous exhibits. *See* ECF No. 19-3.

As for the exhibits, the Court "may consider documents alleged in a complaint and essential to [Eastman's] claim," but it will not consider documents "that were not attached to or referenced in the complaint." *Bey v. City of Oakland*, No. 14-CV-01626-JSC, 2015 WL 8752762, at *1 n.1 (N.D. Cal. Dec. 15, 2015).[6]

To the extent that Eastman's memorandum contains additional factual allegations,

---

    inventor, or through error an inventor is not named in an issued patent, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

[6] The Court notes that Defendants had an opportunity to respond to these exhibits and raised no objection on reply. *See* ECF No. 21 at 6-7.

9

1    "[a]lthough the statements in plaintiff's opposition cannot amend the complaint, the Court may

2    consider these statements in determining whether to grant plaintiff leave to amend." *Rodriguez v.*

3    *Kwok*, No. C 13-04976 SI, 2014 WL 889570, at *6 (N.D. Cal. Mar. 3, 2014) (applying rule to pro

4    se plaintiff); *see also Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining

5    the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a

6    plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to

7    dismiss. Facts raised for the first time in plaintiff's opposition papers should be considered by the

8    court in determining whether to grant leave to amend or to dismiss the complaint with or without

9    prejudice." (internal quotation marks and citation omitted)); *Delacruz v. State Bar of Cal.*, No. 16-

10   CV-06858-BLF, 2017 WL 3129207, at *3 (N.D. Cal. July 24, 2017) (same).

**B.     Analysis**

Apple contends that Eastman's patent claims must be dismissed because Eastman fails to identify "any specific patent claim nor alleges how his purported contributions to the Patents align with particular claims." ECF No. 11 at 17. Moreover, Apple argues, the limited information Eastman has provided indicates that his alleged contributions mirror prior art described in the patents, and he thus fail to plead a contribution as a matter of law. *Id.* at 17-18.

The Court agrees. As pleaded, Eastman's allegations, even if true do not state a plausible claim for joint ownership.

As to the phone-finding patents, the FAC contends that Eastman "invented a novel method and apparatus for locating a lost smartphone or computing device." FAC at 12. This is simply a legal conclusion, devoid of any facts as to what Eastman invented, from which the Court could plausibly infer that Eastman's contribution was "significant," measure it "against the dimension of the full invention," or discern that it did "more than merely explain to the real inventors well-known concepts and/or the current state of the art." *In re VerHoef*, 888 F.3d at 1366.

Moreover, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998). The documents that Eastman submitted, which purportedly convey his contribution to Apple, reveal that Eastman conceptualized a method through which

10

Apple "could leverage the GPS in . . . and /or IP triangulation data for . . . to provide a location (or estimate) . . . which would be launched in Safari by selecting "Locate iPhone" in iTunes."[7] ECF No. 19-3 at 15. In other words, Eastman's concept was to generate a phone location that the phone's owner could access remotely. This concept, however, was well-known in the prior art. *See* ECF No. 12-2 at 17 ("Current systems attempt to address these problems by providing the location of the device to an owner of a lost device, however, these types of systems do not help a person that finds the lost device return it to its owner."); ECF No. 12-3 at 24 (same); ECF No. 12-4 at 18 (same); *cf.* ECF No. 12-5 at 28 (describing a device that "enables an honest finder to contact the particular contact even if the device is secured, in case the owner of the device loses the device"). The Court cannot reasonably infer that an alleged contribution that simply mirrors prior art and is seemingly unrelated to the novel aspect of the invention provides a basis for a nonjoinder claim. *See In re VerHoef*, 888 F.3d at 1366 (explaining that the putative co-inventor's contribution must do "more than merely explain to the real inventors well-known concepts and/or the current state of the art"); *Coda Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, No. 5:15-CV-1572, 2016 WL 5463058, at *5 (N.D. Ohio Sept. 29, 2016*), opinion corrected on other grounds on denial of reconsideration*, No. 5:15-CV-1572, 2017 WL 4271874 (N.D. Ohio Sept. 26, 2017) (granting motion to dismiss § 256 claim where the patent in question "actually identifies the[] very concepts [alleged as plaintiff's contribution] as 'prior art').

The Court reaches a similar conclusion with respect to the '014 patent claim. Eastman alleges that he "declared a process for selling mobile tickets using an Apple operating system" that "closely resembles" claims in the '014 patent, but does not specify any of the alleged similarities. FAC at 13. Eastman's conclusory allegation that his idea was similar to that disclosed in the '014 patent does not provide sufficient detail for the Court to determine the nature of Eastman's alleged contribution, or the degree to which it overlaps with prior art. *Cf. Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 414 (E.D. Va. 2011) (finding that complaint that

---

[7] Incorporation by reference is appropriate because Eastman's complaint directly references this record, *see* FAC at 12; ECF No. 19-3 at 5, and it forms the basis for his inventorship claim, *see Khoja*, 899 F.3d at 1002.

11

"identifies the claims, and thus the subject matter, of the . . . Patent which [plaintiff] allegedly helped to conceive and develop" survived motion to dismiss).

Accordingly, the Court holds that Eastman has failed to state a claim for relief under 35 U.S.C. § 256. The Court is mindful, however, that the liberal policy favoring leave to amend applies with particular force to a pro se plaintiff. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam) ("Unless it is absolutely clear that no amendment can cure the defect, however, a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."). Because the Court cannot say with certainty that Eastman will not be able to identify – consistent with his current allegations – a sufficient contribution to the relevant patents, the Court will grant leave to amend.

**CONCLUSION**

In sum, the Court severs and remands Eastman's state-law claims to state court. The Court dismisses without prejudice Eastman's patent claims.

Eastman may file an amended complaint regarding his patent claims, not later than thirty days from the date of this order. Failure to do so, or failure to otherwise comply with this order, will result in dismissal with prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, which means that Eastman will not be allowed to pursue this action any further.

Eastman may wish to consult the resources for pro se litigants on the Court's website, https://cand.uscourts.gov/pro-se. These materials include the manual, "Representing Yourself in Federal Court: A Handbook for Pro Se Litigants," which can be downloaded at https://cand.uscourts.gov/prosehandbook or obtained free of charge from the Clerk's office.

Eastman may also wish to seek assistance from the free Legal Help Center operated by the Bar Association of San Francisco. The Legal Help Center has two locations: 450 Golden Gate

/ / /
/ / /
/ / /
/ / /
/ / /

1 Avenue, 15th Floor, Room 2796, San Francisco, California, and 1301 Clay Street, 4th Floor, Room 470S, Oakland, California. Assistance is provided at both offices by appointment only.

**IT IS SO ORDERED.**

Dated: November 14, 2018

_____
JON S. TIGAR
United States District Judge