UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN EASTMAN, <br><br> Plaintiff, <br><br> v. <br><br> APPLE, INC., <br><br> Defendant. | Case No. 18-cv-05929-JST <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THIRD AMENDED COMPLAINT** <br><br> Re: ECF No. 44 |

Before the Court is Defendant Apple, Inc.'s motion to dismiss Plaintiff Darren Eastman's pro se third amended complaint. ECF No. 44. The Court will grant the motion in part and deny it in part.

## I. BACKGROUND

The background of Eastman's claims is set forth in greater detail in the Court's orders on Apple's motions to dismiss Eastman's prior complaints. *See* ECF Nos. 27, 39. In brief, Eastman, a former Apple employee, alleges that he contributed to the invention of multiple Apple patents, but that Apple failed to name him as a co-inventor on those patents.

According to Eastman, he disclosed "a novel process for redemption of virtual tickets using a mobile device in his 2006 Intellectual Property Agreement (IPA)" with Apple that "resoundingly matches" a patent Apple obtained for its "Passbook" application, U.S. Patent Number 9,125,014 (the "'014 patent"). Third Amended Complaint ("TAC"), ECF No. 41 ¶ 10. Eastman further alleges that, in 2009, he invented a "novel method to reliably retrieve a lost smartphone or computing device," *id.* ¶ 54, which he submitted through Apple's internal system and continued to advocate for internally, *id.* ¶¶ 73-75. Eastman asserts that this idea was incorporated as the "Find my iPhone" feature initially released on June 15, 2010. *Id.* ¶ 74. Based

on this concept, Eastman claims that he should have been named as a co-inventor on U.S. Patent Numbers 9,104,896 (the "'896 patent"); 8,881,310 (the "'310 patent"); 9,706,032 (the "'032 patent"); 9,763,098 (the "'098 patent"); 8,666,367 (the "'367 patent"); 9,979,776 (the "'776 patent"); and 8,660,530 (the "'530 patent") (collectively, the "phone-finding patents"). TAC ¶¶ 109, 148, 204, 261, 283, 305, 331.

On August 13, 2018, Eastman filed this lawsuit pro se against Apple in state court. ECF No. 1 ¶ 1. Eastman then filed his first amended complaint on August 22, 2018. *Id.* ¶¶ 2, 6. On September 27, 2018, Apple timely removed the case to federal court. *See* ECF No. 1. After Apple moved to dismiss Eastman's claims, ECF No. 11, the Court severed and remanded Eastman's state-law claims stemming from his allegedly wrongful termination, concluding that it lacked supplemental jurisdiction because Eastman's termination was allegedly motivated by reasons unrelated to his patent claims. ECF No. 27 at 6-7. As to the patent claims, the Court held that Eastman had failed to state a claim because his allegations lacked sufficient detail as to his purported contribution and the contributions that could be discerned described prior art acknowledged on the face of the disputed patents. *Id.* at 10-12. The Court therefore dismissed the patent claims with leave to amend. *Id.* at 12.

On December 5, 2018, Eastman filed his second amended complaint, adding a state-law claim for defamation based on the alleged nonjoinder. ECF No. 28. Apple again moved to dismiss. ECF No. 31. On April 10, 2019, the Court granted the motion. ECF No. 39. Concerning the phone-finding patents, the Court reiterated that Eastman's "concept of generating a phone location that the phone's owner could access remotely was already well established in the prior art," *id.* at 5, but concluded that Eastman's filings "suggest[ed] that he may be able to plausibly plead a claim based on concepts related to remotely initiating actions on lost phones," *id.* at 6. The Court reached a similar conclusion regarding the Passbook patent, and therefore did not reach the adequacy of the defamation claims. *Id.* at 7-8.

On May 15, 2019, Eastman filed the operative TAC, which spans 191 pages, 86 of which are dedicated to comparing his notes and the patents' claims. ECF No. 41. Eastman also

expanded his inventorship claim to include the '367, '776, and '530 patents. *Id.* Apple again moves to dismiss. ECF No. 44.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Moreover, "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

## III. DISCUSSION

### A. Successive Motions to Dismiss

The Court first addresses Eastman's argument that Apple waived the ability to rely on additional patents in its Rule 12(b)(6) challenge by failing to cite them in its motions to dismiss Eastman's prior complaints. ECF No. 46 at 8.

With some exceptions not relevant here, Rule 12(g)(2) precludes a party bringing a

successive Rule 12 motion from "raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Apple contends that this rule does not apply to amended complaints, citing cases in which "[c]ourts in this Circuit therefore have permitted defendants moving to dismiss an amended complaint to make arguments previously made and to raise new arguments that were previously available." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 893 (C.D. Cal. 2012) (collecting cases); ECF No. 48 at 11. The Court observes that Apple's authority is comprised of cases from other districts and is contrary to the weight of authority in this district and the clear implication of recent Ninth Circuit case law. *In re Apple Iphone Antitrust Litig.*, 846 F.3d 313, 316-20 (9th Cir. 2017) (applying Rule 12(g) analysis to series of motions to dismiss series of multiple amended complaints); *Green v. ADT, LLC*, No. 16-CV-02227-LB, 2016 WL 5339800, at *6 (N.D. Cal. Sept. 23, 2016) ("Thus, under Rule 12(g) and (h), courts in this district have precluded defendants from raising previously available but unmade arguments in motions to dismiss after a complaint is amended.") (collecting cases); *see also* 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1388 (3d ed. 2005) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading; conversely, a Rule 12 defense that becomes available because of new matter in the amended complaint may be asserted by motion." (footnote omitted)).

Nonetheless, even under Rule 12(g)(2), Apple is not precluded from renewing the argument that Eastman's amendments have failed to cure the defects in his claims. In addition, Apple's reliance on additional prior art materials appears a reasonable response to the new factual allegations in Eastman's latest complaint. Rule 12(g)(2) thus does not bar this motion.[1]

### B. Inventorship Claims

#### 1. Legal Standard

As a general matter, patents must list all of the true inventors. *Trovan, Ltd. v. Sokymat SA,*

---

[1] Nor does the Court find that Apple's use of charts containing single-spaced quotations resulted in a violation of the page limits set forth in this district's local rules. *See* Civil L.R. 3.4(c)(2), 7.2, 7.4.

4

*Irori*, 299 F.3d 1292, 1301 (Fed. Cir. 2002). "Conception is the touchstone of invention, and it requires a definite and permanent idea of an operative invention, including *every feature* of the subject matter sought to be patented." *In re VerHoef*, 888 F.3d 1362, 1366 (Fed. Cir. 2018) (internal quotation marks and citation omitted). A definite and permanent idea, in turn, exists "when the inventor has a specific, settled idea, *a particular solution* to the problem at hand, not just a general goal or research plan." *Id.* (citation omitted).

In order for an invention to have co-inventors, they "need not 'physically work together or at the same time,' 'make the same type or amount of contribution,' or 'make a contribution to the subject matter of every claim of the patent.'" *Vapor Point LLC v. Moorhead*, 832 F.3d 1343, 1349 (Fed. Cir. 2016) (quoting 35 U.S.C. § 116). Rather, a joint inventor must:

> (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art.

*In re VerHoef*, 888 F.3d at 1366 (quoting *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed Cir. 1998)).

The issuance of a patent "creates a presumption that the named inventors are the true and only inventors." *Ethicon Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). But "[a] person who alleges that he is a co-inventor of the invention claimed in an issued patent who was not listed as an inventor on the patent may bring a cause of action to correct inventorship in a district court under 35 U.S.C. § 256." *Vapor Point LLC*, 832 F.3d at 1348 (quoting *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1357 n.1 (Fed. Cir. 2004)).[2] To overcome the presumption of correctness, "the alleged co-inventor or co-inventors must prove their contribution to the

---

[2] 35 U.S.C. § 256(a) provides in full:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

5

conception of the claims by clear and convincing evidence," *Ethicon*, 135 F.3d at 1461, "and must provide evidence to corroborate the alleged joint inventor's conception," *Eli Lilly & Co.*, 376 F.3d at 1362.

"The overall inventorship determination is a question of law, but it is premised on underlying questions of fact." *Eli Lilly & Co.*, 376 F.3d at 1362.

### 2. Request for Judicial Notice

Apple's inventorship arguments largely turn on documents for which it requests judicial notice. ECF No. 44 at 11.

With two exceptions, "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, No. 18-1010, 2019 WL 429555 (U.S. May 20, 2019). Under the first exception – judicial notice pursuant to Federal Rule of Evidence 201 – "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). However, courts "cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed." *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, No. 16-CV-06499-DMR, 2017 WL 3136443, at *5 (N.D. Cal. July 24, 2017).

"Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. Its purpose is to "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken − or doom − their claims." *Id.* at 1002.

The Ninth Circuit has recently expressed frustration with "[t]he overuse and improper application of judicial notice and the incorporation-by-reference doctrine," explaining that

"[d]efendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Id.* at 998. In particular, the *Khoja* court emphasized that courts should tread carefully in judicially noticing the contents of a record to contradict the complaint's operative allegations where "there is a reasonable dispute as to what the [record] establishes." *Id.* at 1001. This Court has echoed those concerns in denying similar requests for judicial notice. *See Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1031 (N.D. Cal. 2018) ("Defendants repeatedly do what *Khoja* forbids – ask the Court to take judicial notice of documents that they then use as a basis to challenge the factual averments in the complaint.").

Even more to the point, the Federal Circuit – in an intervening decision that Apple fails to cite − has rejected the use of judicial notice to support precisely the argument Apple seeks to make here. *See CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350 (Fed. Cir. 2019).[3] In *Coda*, the district court dismissed plaintiff Coda's inventorship claims under § 256, relying in large part on two points. First, the disputed patent "actually identifie[d]" Coda's alleged invention as "prior art," including a reference to Coda's own international patent application disclosing similar concepts. *Coda Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, No. 5:15-CV-1572, 2016 WL 5463058, at *5 (N.D. Ohio Sept. 29, 2016). Second, the district court, over objection, took judicial notice of an article published by Coda's CEO, reasoning that the court "need not determine whether any portion of the article is actually true or factually correct in order to determine whether it was a 2008 public disclosure of something Coda now claims was secret when disclosed to Goodyear in 2009." *Id.* at *2. Based on a side-by-side comparison of the complaint's

---

[3] As the Federal Circuit acknowledged in *Coda*, the proper application of the Rule 12(b)(6) standard, including the propriety of judicial notice, is a matter of "the regional circuit's law." 916 F.3d at 1357. Here, the *Coda* court's analysis reinforces the general principles articulated by the Ninth Circuit in *Khoja*, as applied to a matter within the Federal Circuit's expertise. The Court discerns no material difference between Ninth Circuit and the Sixth Circuit law in this area. *See id.* (applying Sixth Circuit law).

7

allegations and the article's contents, the court concluded that the article publicly disclosed each element. *Id.* at *5.

The Federal Circuit reversed, explaining that the district court's analysis was procedurally improper. As to the first point, the court explained that "to the extent the district court relied on the '586 patent and [the] prior, published patent application to determine that the alleged novel trade secrets were already in the prior art, such a determination was improper at this stage, for at least the reason that it constituted an inference adverse to Plaintiffs when there were other reasonable inferences to draw in their favor." *CODA Dev. S.R.O.*, 916 F.3d at 1360 n.7. The Federal Circuit likewise faulted the district court's use of judicial notice, explaining that "whether the [Coda CEO's] article actually disclosed those alleged novel trade secrets was a reasonably (indeed, hotly) disputed factual issue – one outside any judicial-notice exception to the general rule requiring conversion, and one that should not have been resolved adversely to Plaintiffs on a motion to dismiss." *Id.* at 1360.

Here, Apple requests judicial notice of two patents and a patent application. ECF No. 44 at 11; ECF No. 45 ¶¶ 13-15. Apple asserts that it does not rely on those documents "for the truth of any disclosure therein, but rather, to what was in the public realm at the time they were filed." ECF No. 44 at 11. But Apple does not simply ask the Court to take judicial notice of the *fact* that the documents were in the public realm. Rather, Apple asks the Court to judicially notice the documents' *contents* as disclosing all of Eastman's claimed inventions, through precisely the same side-by-side comparison the Federal Circuit deemed improper. *See CODA Dev. S.R.O.*, 916 F.3d at 1356 (explaining that district court erred when it "adopted Defendants' mapping of the [judicially noticed] article's contents to the complaint's description of the elements disclosed to Goodyear and concluded that the article publicly disclosed each of those elements"); ECF No. 44 at 14-19. At least at this stage, Eastman's dispute as to "whether the [documents] actually disclosed those alleged [inventions]" is reasonable, and one that the Court cannot resolve via judicial notice. *CODA Dev. S.R.O.*, 916 F.3d at 1360.

Accordingly, the Court DENIES Apple's request to take judicial notice of Exhibits J, K,

and L.[4]

### 3. Phone-Finding Patents

Apple's argument that Eastman's contributions to the phone-finding patents, as reflected in his notes, "constitute nothing more than what was already known in the prior art," ECF No. 44 at 12, rests on materials for which the Court denies judicial notice, *see id.* at 14-19. The Court therefore denies Apple's motion to dismiss these claims.

### 4. Passbook Patent

As explained above, the Court cannot consider Apple's prior art argument based on Exhibit L. ECF No. 44 at 21. The Court turns to Apple's remaining arguments regarding this claim.

Apple first stresses that Eastman has conceded that "he did not contribute to the invention of any claim that includes the proximity fence concept." ECF No. 44 at 20. In the TAC, Eastman states that "the only claims [he] cannot attach some previous conception to involve the proximity fence. The proximity fence exists only from smartphones, which didn't exist a decade earlier[,] when [Eastman] originally devised a solution for the problem." TAC ¶ 493. Apple reasons that, because the independent claims of the '014 patent each set forth a claim limitation containing the proximity fence concept, *see* ECF No. 45-8 at 12:47-63, 14:14-29, 15:36-50, Eastman has conceded that he did not contribute to any claim whatsoever in the '014 patent. ECF No. 48 at 6-7. The Court is not persuaded that this hyper-technical and ungenerous reading of Eastman's pro se complaint accurately characterizes his inventorship claim or his concession. Fairly read, Eastman concedes that he did not develop the proximity fence *concept*, but does not disclaim inventorship as to every claim which, as a matter of patent law, includes that concept. Therefore, this concession does not foreclose Eastman's inventorship claim. *See Vapor Point LLC*, 832 F.3d at 1348-49 ("All inventors, even those who contribute to only one claim or one aspect of one

---

[4] The Court does not, however, disturb its prior conclusion that the Apple patents for which Eastman seeks correction of inventorship are incorporated by reference, because they are extensively referenced throughout the complaint and form the basis for his claims. *See* ECF No. 27 at 11 n.7 (citing *Khoja*, 899 F.3d at 1002).

9

claim of a patent, must be listed on that patent.").

Apple next asserts that Eastman fails to allege that he communicated his exhibits to Apple or any of the named inventors of '014 patent. ECF No. 44 at 20-21. But Eastman need not have shared his notes themselves with Apple. The notes serve as Eastman's corroborating evidence of the specific ideas he shared when he "disclosed the ticketing problem and his solution" to Apple during the process of his 2006 IPA. TAC ¶ 98; *see id.* ¶ 375 ("[Eastman's] notes represent a crucial narrative to corroborate [Eastman's] pre-employment Apple IPA in Exhibit 7."). As the Court explained in its prior order, it can reasonably infer that this is what Eastman alleges occurred. ECF No. 39 at 5 n.3.

Finally, Apple argues that Eastman's ideas are all described in the background and summary sections of the '014 patent, and therefore constitute prior art that cannot be an inventive contribution as a matter of law. ECF No. 44 at 21-23. As noted above, the Federal Circuit in *Coda* instructed that district courts should generally refrain from making this determination on a motion to dismiss. *CODA Dev. S.R.O.*, 916 F.3d at 1360 n.7 (noting that the district court erred where it "relied on the [disputed] patent and [a] prior, published patent application to determine that the alleged novel trade secrets were already in the prior art"). With this guidance in mind, the Court concludes that Eastman's claims have evolved to a level of factual detail sufficient to preclude resolution of Apple's argument. Previously, Eastman alleged only the bare terms of his 2006 IPA, with no explanation as to how those concepts connected to the '014 patent's specific claims. ECF No. 39 at 7. Noting that the face of the patent indicated the existence of "prior art mobile ticketing programs," the Court found that more explanation from Eastman was needed to plausibly infer that his alleged contributions were inventive. *Id.* Now that Eastman has provided that explanation in great detail, TAC ¶¶ 374-429, the Court cannot undertake the fact-bound analysis that Apple proposes. *See CODA Dev. S.R.O.*, 916 F.3d at 1360 n.7.

Accordingly, the Court denies Apple's motion to dismiss this claim.

**C. Defamation**

Because the Court concludes that Eastman has adequately stated a claim for correction of

inventorship, it turns to his defamation claims based on Apple's failure to name him as a co-inventor.

Apple first contends that these claims are barred by the one-year statute of limitations applicable to defamation claims. ECF No. 44 at 23-24; *see also* Cal. Code Civ. Proc. § 340(c). Eastman does not dispute that his claims are facially untimely, but he seeks relief under various equitable doctrines. ECF No. 46 at 13-15. Apple's reply does not address Eastman's equitable estoppel or equitable tolling arguments. *See Lantzy v. Centex Homes*, 31 Cal. 4th 363, 383-84 (2003) (explaining the two doctrines). Further, Apple's cursory argument that no delayed discovery rule applies to Eastman's defamation claims is not entirely convincing. *Shively v. Bozanich*, Apple's sole authority, reasoned that "[t]he discovery rule has not, however, been applied to postpone the accrual of a cause of action based upon the publication of a defamatory statement contained in a book or newspaper. . . . Plaintiff does not explain satisfactorily how the equitable considerations that may apply to a defamation that is hidden from view might apply to a defamation that is made public in a book." 31 Cal. 4th 1230, 1250 (2003). Given the facial distinctions between the publication of a patent or patent application and "a book that was distributed to the general public," *id.* at 1253, simply citing *Shively* does not foreclose Eastman's argument.

Apple alternatively argues that, even if Eastman's claims are timely, the omission of his name from a patent fails to state a claim for defamation as a matter of law because "[a] published statement cannot be defamatory if it does not identify the plaintiff." ECF No. 44 at 24. To be more precise, for a claim based on an "alleged injurious falsehood of a statement," such as libel, "the plaintiff must effectively plead that the statement at issue either expressly mentions him or refers to him by reasonable implication." *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1045-46 (1986). This "'of and concerning' or specific reference requirement limits the right of action for injurious falsehood, granting it to those who are the direct object of criticism and denying it to those who merely complain of nonspecific statements that they believe cause them some hurt." *Id.* at 1044. The rule applies to a "claim against a nonmedia defendant in a purely commercial

11

dispute" as well. *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal. 4th 277, 293 (2014). "In California, whether statements can be reasonably interpreted as referring to plaintiffs is a question of law for the court." *SDV/ACCI, Inc. v. AT & T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008).

Here, Eastman has not adequately alleged facts from which the Court can plausibly infer that his omission from the patents refers to him by reasonable implication. While the listing of inventors on a patent implies that no other person invented it, the group referred to by implication is simply every other person. The California Supreme Court's analysis in *Blatty* is instructive. There, plaintiff alleged that his novel had been omitted from a list of *New York Times* bestsellers. *Blatty*, 42 Cal. 3d at 1046. The *Blatty* court reasoned that the group referred to by implication was everyone potentially eligible for the list, namely, all "books currently in print and their authors." *Id.* The court further explained that plaintiff therefore could not satisfy the specific reference requirement because where that "group is large − in general, any group numbering over twenty-five members − the courts in California and other states have consistently held that plaintiffs cannot show that the statements were 'of and concerning them.'" *Id.* The group referred to by implication in Apple's patents is even larger than in *Blatty*.

Without more, a reader of one of those patents would have no reason to perceive that the alleged omission referred to Eastman in particular, as opposed to the undifferentiated morass of other people not named. Eastman alleges that "[m]any people internally at Apple knew [he] was the original and true inventor of Find my iPhone, but nobody else did; including the public or 'partner companies' in the industry where [Eastman] might potentially work." TAC ¶ 448. For those who did not know that Eastman claimed to be the inventor of Find my iPhone, the Court cannot plausibly infer that they would discern any reference to Eastman. *See Fitbit, Inc. v. Laguna 2, LLC*, No. 17-CV-00079-EMC, 2018 WL 306724, at *8 (N.D. Cal. Jan. 5, 2018) ("It is hard to see how a party unidentified and unknown to the audience of the alleged defamation can claim it was defamed and injured."). Moreover, under *Blatty*, Eastman cannot satisfy the specific reference requirement merely by alleging that he "suffered injury by loss of the benefits that inclusion [on the patents] would have brought." 42 Cal. 3d at 1037; *see also* TAC ¶ 447 ("If

plaintiff was properly joined on [the patent] applications, its further beyond doubt he likely would have secured employment in his industry in four years' time."). In other words, it is not enough that Eastman was prevented from asserting his inventorship status to others without fear of contradiction.

But it appears plausible to the Court that a person aware that Eastman claimed to have invented these concepts could reasonably understand his omission from the patents to refer to him by reasonable implication, namely, by contradicting his claims. *Sharratt v. Hous. Innovations, Inc.*, 310 N.E.2d 343 (Mass. 1974), the out-of-state authority on which Eastman relies, lends support to this reasoning. ECF No. 46 at 13; TAC ¶¶ 445-447. In *Sharratt*, an architect's customer allegedly issued a brochure for a new building that correctly named another architect working on the project but omitted the plaintiff. 310 N.E. 2d at 344-45. Although it did not directly discuss the specific reference requirement, the court accepted plaintiffs' allegation that "[f]rom this statement it could be inferred that the individual plaintiff was not the architect nor had the corporate plaintiff contracted to provide these architectural services, despite their representations to the contrary to those with whom they had business dealings." *Id.* at 142. Apple does not address *Sharratt*.

The Court need not conclusively decide the issue, however, because under California law "a defamatory statement that is ambiguous as to its target not only must be capable of being understood to refer to the plaintiff, but also must be shown actually to have been so understood by a third party." *SDV/ACCI*, 522 F.3d at 960. There is no allegation that any third party in fact read any, let alone all, of the patents and actually understood them as referring to Eastman.

The Court will therefore grant the motion to dismiss Eastman's defamation claims. Because this is the first time the Court has addressed the adequacy of the merits of these claims, it will grant leave to amend.

## CONCLUSION

For the foregoing reasons, the Court DENIES the motion to dismiss Eastman's inventorship claims. The Court GRANTS the motion and dismisses without prejudice Eastman's

13

defamation claims.

Eastman may file an amended complaint regarding his defamation claims *only*, not later than thirty days from the date of this order.

The case management conference currently scheduled for August 21, 2019 is continued to November 12, 2019. Case management statements are due November 5, 2019.

**IT IS SO ORDERED.**

Dated: August 20, 2019



_____
JON S. TIGAR
United States District Judge